Mr. Crisp. May it please the Court. Your Honors, this case is about a partnership that was formed between the appellants Alex Paykoff and Satisfy Life Foundation and the appellees Chris Cawley and CBCGLLC. They agreed to partner to host a series of events, entrepreneurial events, where they invited people down to different locations to listen to speakers. After the first event, that event lost money and the parties are fighting over that money today. Could you speak up just a little bit, maybe pull that microphone closer? Yes, Your Honor. And in dismissing the appellant's claims under 12b6, the district court erred because the appellants pleaded sufficient facts to establish their plausible right to relief. Quite frankly, the appellees had fair notice of what each of these claims were and the facts that they were based on. If the court, if this court accepts all of the appellants well-pleaded facts as true and views them in the light most favorable to the appellants, the court should find that each of the appellant's claims are plausible because the court can draw the reasonable inference that the appellees are liable under those. Therefore, we ask that the court fix this error by reversing the district court, vacating its dismissal of the appellant's claims, and remanding the case for further proceedings. Because this is a 12b6 dismissal, I'd like to just point the court to a few of those well-pleaded facts that we believe gets us over the hump of 12b6, satisfies the federal rule of civil procedure 8, and should support your reversing the district court. Ms. Cawley, if you look at the record of page 74, Ms. Cawley was first hired by Mr. Paycoff to publish his book, which was called Get Satisfied, you know, How to Live a Balanced, More Satisfied Life. And it was only at the suggestion and prompting of Ms. Cawley that they formed this partnership to host these series of entrepreneurial events called Masterminds. It was her idea, and Masterminds was the name that she gave it. So you're drawing a distinction between the hiring and then this subsequent idea? Yes, Your Honor. Yes, the contract to publish the book was very specific about what would be accomplished. This was a separate thing, where Mr. Paycoff and Ms. Cawley agreed that they would be partners in this, they were going to split the proceeds of it 50-50, and that they would both exercise control and execution in planning the event. And just remind me in the complaint that that division of hiring for one thing, partnership for the other, is delineated? I believe it is, Your Honor. At the very least, there's a reasonable inference that can be drawn. Does the complaint contain anything that Paycoff thought that the second portion was a partnership? Any statements by Paycoff, not by your client? Oh, I'm sorry, my client is Mr. Paycoff. He is the appellant. Yeah, that's right. He said that, but did, okay. We actually also plead that Ms. Cawley made statements to that effect, and in fact, represented herself as a business partner to third parties. In planning the event, they interacted with various vendors, and Ms. Cawley, in emails, since we've gone through most of discovery and exchange documents in this case, we know in emails, she represented herself as the business partner of Mr. Paycoff. Not only does that go to show, not only is that alone, I believe, enough of a fact to get us over the hump with the partnership. Do me a favor, just that line of questions I had. What's, just quoting from the complaint, where is it that Paycoff held himself out to be Cawley's business partner? Oh, my client, Mr. Paycoff. Yes, in the complaint. Well, I can say, let me, I would say on page 74, where Ms. Cawley represents herself as a business partner, Mr. Paycoff is part of those communications. But does he ever, is it alleged that he ever described the relationship that way? No, I don't think. I'm not saying that's determinative. I just, I was trying to remember if both people in the complaint were in agreement that it was a partnership. Yes, Your Honor. I think if you look at page, pages 74 of the complaint. Okay. There are several statements, not the specific statement that Mr. Paycoff said, we are business partners to any third party, but he certainly represented himself that way to Ms. Cawley in discussing their plans and going forward and how the funds were going to be split up. And then we were talking about Ms. Cawley representing her, the fact that it was her idea to host these masterminds, the name of them, masterminds, came from her. She had also represented to Mr. Paycoff that she had, she had hosted these for 22 years and they had always been financially successful. And that goes to our negligent misrepresentation claim, a fact that shows that she, because she's backed off of that since then and we believe it's not true. The fact that she represented these things were always successful and that she had been doing it for so long and there was no problem. That's part of our negligent misrepresentation claim. But I also want to point out when we talk about Ms. Cawley representing herself as the business partner of Mr. Paycoff, I think that there's a reasonable inference that could be drawn there because I know in an appellee's brief they just, they say that there's no facts alleged that show that she was, she had control of planning or execution of the event. But the fact that she was the lead communicator to these vendors, representing herself as the business partner, including the actual venue space in Punta Mita, she represented herself as the business partner of Paycoff, Mr. Paycoff, that shows that she was executing control, that she did have control and that she was at least sharing control with Mr. Paycoff in planning this event. Is there any reason why in paragraphs 12 and 25 it only speaks of the agreement to share in profits and that those paragraphs don't say anything? I realize that it talks about that in some other portions of the complaint, but I don't see anything specifically in those two that expressly talk about the sharing of profits. It doesn't say profits and losses. Is there any reason why it was drafted that way? I don't think there is a reason, Your Honor. It doesn't say anything more because I think that when I drafted this complaint, I believe that when I say split, I mean split in half. But as far as the losses go, there were never discussions about losses. And we are not alleging that we agreed to split losses. That was more of an assumption. And under Texas law, even if you look at the Texas Business Organizations Code, they list the five factors that determine whether a partnership exists in the absence of a partnership agreement. I think the very last line says something along the lines of the absence of an agreement to share losses is not in itself determinative that the partnership didn't exist. And I think, quite frankly, the drafters of that statute would probably argue because this happens all the time, right? Anybody who gets into a partnership together, all they talk about is how much money they're going to make, how successful it's going to be. And a lot of times people don't talk about what's going to happen if things go wrong. And so just because they didn't explicitly talk about sharing losses, the fact that all of those other factors are satisfied by the facts that we plead, especially the fact that she was representing herself as a partner, exercising control over the event and the partnership, it's almost just left unsaid that those losses should be shared as well. And I'm sorry, Your Honor, and I'm not sure if I directly answered your question. You had said paragraph 12 and 14, and I want to make . . .  What's that? Twenty-five. Yes, sorry. Twelve and twenty-five. You've answered it. You said there was no discussion of losses. Okay. Yes. But to just address the appellee's kind of point, there was no additional discussion about, you know, percentages of sharing profits or anything like that. The discussion was at the high level of Mr. Paycobb was going to fund the event, and then he would first be paid back his money from the proceeds of the event, and then they would split the rest 50-50. And I think the inference, the reasonable inference that can be drawn, especially if it's viewed in the light most favorable to us, is that that would be a 50-50 split. And unfortunately, this event, and we wouldn't be here today if this event had made money. Unfortunately, it lost money. But the partnership had originally planned to hold future events after this Punta Mita event where they brought the same clients in and hopefully more clients who would spend more money to future events. But Ms. Colley sent out a statement by email or Facebook, I think both, and stated that Mr. Paycobb was actually stepping aside from this partnership and that she was going to assume full responsibility for the events going forward. I think the next event was going to be held in San Diego and that she would be rebranding it under what was called the One Mastermind instead of the Satisfied Life Mastermind, and that she would take these clients and host them at future events, which, one, is the basis of our business disparagement claim, our tortious interference with a contractual relationship, and the negligent misrepresentation claim. But, two, it also, the reasonable inference that can be drawn there is that she was more than just a consultant, as the appellees argue in their brief. A consultant wouldn't take that level of responsibility, financial responsibility, sweat equity responsibility, for these clients if she had simply been a consultant, and that was never the case. What economic responsibility did she take? I believe she would have taken, you know, paying for or fronting the costs of the next event for hosting the clients that came to San Diego or wherever they held those future events. No, it's not. No. It's just that she reached out to these people and said, you know, I'm taking over. Mr. Paycoff is stepping aside, which was not authorized, wasn't, that statement wasn't approved and was not true, but she said that she would be hosting the next event, and so I think the reasonable inference that would be asked to be drawn from that is she would be taking responsibility for these clients going forward. You know, we actually state, I think we state that she would be realizing any future financial benefits, but she would also be fronting any costs that were associated with it. Your Honor, it's based on these facts and others that were pled in the complaint. I think it's clear the district court ignores the notice pleading standard of Rule 8 and instead seems to conflate the heightened pleading standard of Rule 9 or ask for more than that's really necessary. Even the negligent, I mean, we are not pleading fraud here. We're not pleading anything that would fall under Rule 9. Negligent misrepresentation doesn't fall under Rule 9, but throughout both the district court's order and the appellee's brief, there's always a discussion about, well, the appellants didn't talk about, you know, when this would happen or who or why or how, but those are things that need to be explained in satisfying Rule 9 and not Rule 8. I think it's hard to argue that the appellees didn't understand what was being alleged against them and the facts that it was based on, and therefore, we would ask that the court reverse the district court and vacate its judgment and remand this case back for further proceedings. All right. Thank you, Mr. Crisp. Thank you, Your Honor. I'll save time for rebuttal. Mr. Norrett. Good morning. May it please the Court, I start by apologizing for being in the wrong room. If that's the worst mistake you ever made, it's not anything to worry about. That would be a good day, wouldn't it? We've had counsel who went to the wrong city, so. We'll take that as a win. So, early start. I do agree with opposing counsel on something he said a minute ago. High-level discussion. The level of discussion is so high that you can't see any allegation that's not vague. The alleged partnership does not occur in a vacuum. It starts with a book deal, and it's not a book deal, as opposing counsel said, between Pacoff and Cauley. It's a book deal between Pacoff and Game Changers. That's her business that does that. That's pretty clear. But the the appellants like to jump back and forth and say, basically, both Pacoff and his charity are essentially one unit. And Cauley and her business, a for-profit business, is effectively one unit. But these are supposed to be four people, so, or four entities. So, as opposing counsel's brief pointed out, they initially filed this as Pacoff versus Cauley and her business. And then we filed the same motion to dismiss that was eventually granted, but we had the additional elements of, by the way, your narrative, even just taking away and assuming that the narrative is good enough, the narrative is alleging claims by the charity against Cauley. That's the narrative. So then he fixed it, but he fixed it by basically just redefining the plaintiffs as him and the charity. And so what you don't see is any delineation between the two plaintiffs and the two defendants. You never see an allegation of what Game Changers is supposed to be doing. Now, he says, well, the defendants suggested we do this series of events. The defendants is a person who speaks and a business who does not speak. So it's very odd to say defendants suggested this. No, if anybody suggested it, it would have been Cauley. That's a natural inference one could take. But then it all kind of falls apart. It's supposed to be for a charity, so how much money is the charity getting? Is it getting all the profits? Is Pacoff, who's fronting the bill, is he going to get all this money back? So he's really not in the charity for anything, and my client is donating to the cause in hopes of making money. So you have all this absence of detail to making it so vague. There's a number of cases I gave. But Mr. Chris makes a valid point, which is this is rule 8 pleading and not rule 9. You're not suggesting that there's a requirement of the kind of detail that rule 9 would require for fraud? Well, no, but I do think that you have to have allegations sufficient. I do think you need to take out all the legal conclusions, and I do think that you think when you have such vagueness that you can't see what the duties were, I mean, at all. And I think when you compare this to the cases, the cases reveal that pretty clearly. Cases they cite. So I'll just give you two of the best of on there, but just skipping down to the Smith v. Insurance Adjusters, which they cite at page 11. And they cite this to support the idea that the failure and how to split proceeds should not be necessary. But in Smith v. Insurance Adjusters, you had two insurance adjusters, two insurance people doing business together, and there are significant details throughout. I mean, significant, where they're working together, they're issuing, handling claims in Texas, filing the present action in Texas, and the case is really not about whether or not they are even partners, it's just about whether or not it's going to be Texas law or another law that applies. And this is true throughout. In the United States, ex rel. Riley case cited by appellants, that's a hospital that has a scheme of physician defendants that were dealing with organ transplants. Very detailed case, lots of details, and so you don't have that anything here. You don't have a point of where you can say who has duties, where's the money, where's it going to go, where's it going to come from. If you just, you are to take natural inferences, you are not to take unnatural inferences, right, or unreasonable inferences. And so the case doesn't start as in a vacuum. It starts with a vendor relationship, and then you have this spectrum of partnership elements. So we start at zero. We don't start in the middle, in a vacuum. We start at zero. So what natural, what facts were alleged in the pleading that take it off zero? Well, he says that we sent some information to third parties presented as a partner. Okay, that's an allegation, but whenever you see the case law that they cite, there's one that's really good. And the court, the Vigo versus Reed case, for example, and this one, the opinion says Reed stated that Vigo made numerous statements via email with various Well, when you go to the answer at 59 at the trial docket, and this is the part of the problem with a lot of these cases, is that we're reading opinions where the court justices have read the trial briefs or the trial pleadings and come to a conclusion and then summarize them in the opinion. But if you go back and look at what was stated at answer at 59, what you see is a snippet of an entire email, email addresses it went to, what was said, and how it was said. Very specific allegations that are not vague. And so if we just take away the legal conclusions and say, well, we had a partnership because I say we have a partnership, and go through it at that level, then of course you can confirm that. But if you take out all of the legal, let's see, what does the good case have to say, conclusionary allegations, unwarranted factual inferences, or legal conclusions, which Alan talks about, 65F4 at 743, then you're not left with much. Sure, we know he's making a claim of a partnership, but it has to be more than that. You have to at least talk about these things. And of course, he said, well, you should have had to let us add more and amend. Well, all these same complaints we made in our first motion to dismiss, and so they had ample opportunity to add any facts. They could have done that, and they didn't. It's really just the first 12 paragraphs, right? Say again? It's the first 12 paragraphs, and two of them specifically assert that your client made representations that this was a partnership, with no quote specificity. Right. That's it. It's two paragraphs, primarily. Primarily. And of course, Judge O'Connor. And remind me from your statement of the case, what would you say you would agree was the business relationship? It's very clear, even from their pleadings and our answer, if that mattered, there was a book deal between Game Changers and Paycoff. And in our answer, we said that my client was donating to the charity as a vendor and would take money if there were profits of $30,000. That's in our answer. But we weren't fronting any money, zero dollars. Here's another thing. Okay, you're raising money for a series of events. That's what they allege. Okay, so let's say you make money. What does that mean? Does that mean if there are $200,000 in expenses, he's taking all of the money, he personally is taking all of the money, all the way back, so he has nothing in it, and now we're not going to have any money for the future events. And where do we figure out how this works? There may have been a – if you wanted to say there was a discussion of a deal, he could at least allege that, but our answer says no. And of course, again, it's not about our answer. It's about their pleading. But their pleading is so vague as to say, okay, so we have $200,000 in expenses, which is news to us because there's no allegation we have access to the books, ever seen the books, ever spent a dime. And there's a good reason for that. There's no allegation about that. So there's no allegation that we actually chose vendors at all. So there's just nothing there. And so when you start saying, okay, we've got an individual who has a charity he established, and he sues the woman who helped him – sues the woman who owns the business that did the books. These are all four very different entities, and if we're all doing this for charity, then what is the relationship here? Is this just a scam? I mean, I don't know. We don't have any reason to believe that it is or is not. What we do know, without a doubt, is that he individually sued Game Changer, the book deal, and her, Collie. I don't think there's a standing issue, no. I think there's an overstanding issue, if that's a thing. So I do want to point out a couple of other things. Just like in the Vigo case – in fact, I was going to ask – I discovered this actually yesterday in looking at the trial-level documents that these cases have because I just kind of discovered that when the opinions are being written, you folks are summarizing what things say. And so then when this court looks at that opinion, it's not looking at the raw pleading that that opinion was based on. I think it would be super helpful for this court to see some of the – just excerpts that are being referenced in these opinions. I was going to print it out, but I didn't want to cause a fuss. But these paragraphs that are being referenced have specifics. In the Kopsink v. Page case cited by appellants – and he cites this to say that the counterclaim does not plead the dollar amount of damages the defendant suffered as a result of the alleged disparagement. This is a disparagement claim. And plaintiffs argue this failure warrants the dismissal of the claim because the complaint is devoid of facts to establish special damages. However, defendants have indicated the consequence of the alleged disparagement involving transferring accounts, which transfer resulted in financial damage in an amount to be proved at trial. So we don't have an exact number. We never asked for an exact number. We understand that there's a spectrum. But if you go to the defendant's answer at 12, which is referenced by the court in that opinion, it says specific people transferred their accounts away. So we know how we're going to figure this out. We know where it's going to be. There are more details that are being summarized by the court's opinion. And this happens a lot. So some other things we want to get to. In the Parr v. Forest River, this was a manager of a cargo trailer company suing his previous employer, and they're back and forth. He fails to get the – actually, he's being sued. He fails to get the claims dismissed. There's a great line by the court. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that the defendant has acted unlawfully. And here it is, where a complaint pleads facts that are merely consistent with a defendant's liability. It stops short of the line between possibility and plausibility to entitlement of relief. And that's Parr v. Forest at 5 and 6. And I think that's where we are. He's got a narrative, and he's presented his narrative. He's made some vague allegations, but they are merely consistent with the defendant's liability and stopping short of the line between possibility and plausibility. There's one other case that I thought was interesting that the opposing counsel cited that I think needs more discussion, and that is the General Electric C.A.P. Corp. v. Posey Fifth Circuit case. It's a challenge where the plaintiff's pleading explained with little more purported misrepresentations at issue, alleged defendant's responsibility for those misrepresentations, and asserted defendant's lack of reasonable care. In that case, GECC alleged it was induced to lend ProMedCo $20 million. And then it winds up suing on misrepresentations. And the quote that's being taken from the lesson here is that you don't have to give me the exact words that were stated at an oral meeting in order to allege misrepresentation. But in that case, that part of it is just a small part of the story. There were a lot of documents that were badly audited or not audited. And so when the court's talking about that, the court was, you didn't need that at all. That part of it was unnecessary to make the negligent misrepresentation. The court was simply saying, oh, by the way, we don't have to have this little thing. We don't have to have every little thing. And we have not asked for every little thing. If we could just get a, show me what the difference in duties between Collie and her business. Is there a difference? Are they just glommed together? Is that a legal word? I don't know. Are they just added together so we're going to treat both of these defendants as though they're the same individual? That's what opposing counsel does. We don't think that's sufficient. What we know is that this relationship certainly starts out as a vendor relationship. And we know that, that Paycoff wants to turn it into a partnership so we can ask our client to pay money for it. I think everybody here has been involved in enough natural inferring partnerships where one person's the money and one person's management. And that if there's money, then the money guy gets more of the money. Or if there's money lost, well, you were the money guy for a reason. We needed you for a reason. So it can't be simply after the fact, we're going to share. It gets to hear that it's half. We're not going to talk about it in the pleadings that it's supposed to be half. It often is not half in many partnerships. So why do we assume that it's half? Particularly when the whole idea is to raise money for a charity. We would argue, Your Honor, that that's insufficient. Unless you have further questions. Well, it's not that frequent counsel say to us, we can write opinions better. This isn't critical. This is a sincere question. What you're saying is in 12B6 cases, the difficulty for you researching was that the appellate level, we weren't quoting the complaint. Because Judge O'Connor in the footnotes extensively quotes the complaint. So what you're saying is it's hard. At the appeal level, for an appeals court to read an appeals opinion, which is summarizing evidence. The simple thing to do would be to quote the exact language from the complaint. It would be better to go all the way down. Which Judge O'Connor did do. Judge O'Connor did do. But there's no hyperlinking into ECF and all that.  Okay. But it would be very natural for this court to summarize that, right? So you lose the detail. But I do, I'm not going to do it if the court doesn't want it. But under Rule 28J, I think it is, I could send in just excerpts of these if you'd like. No, we have the complaint. What's that? We have the complaint. No, no, but you don't have the complaints that are referenced by the cases. Oh, in those cases. Yes. I see what you're saying. No, we're all set. Don't do it? No, we don't do that. Okay. Thank you. Thank you, Your Honors. Thank you, Mr. Norred. Mr. Crisp or Riveau? Thank you, Your Honors. May it please the Court. My friend on the other side talked extensively about the facts underlying these different cases that we talked about. But I think the underlying point here is that none of the cases that were discussed set a pleading floor in order to satisfy Rule 8. And any fact that is necessary to satisfy Rule 8, I'm assuming, usually will end up in the opinion. Or in the case of Rule 9, will be explicitly spelled out in the who, what, when, where, why requirements. The thing is, under Rule 8, it's a notice pleading standard and it's fact specific. And that's why these cases don't necessarily . . . Do you know off the top of your head the paragraphs from your complaint that you think are most explicit, detailed, showing a partnership? Do you remember the numbers of the paragraphs? Am I right? It's basically 10, 11, and 12. Would it be okay if I just grabbed my . . . Oh, no, that's all right. Keep going with your rebuttal. I know it's 74, 75. Those are the most . . . You were talking about page, the record page. Yeah, okay. Yes, page is the record. I don't have these specific paragraphs and I should have brought that note. No, no, no, no. But also, the appellants or the plaintiffs in a case, they're just not required to explain the level of detail that my friend on the other side talked about. The accounting between Mr. Paykoff and his charity and, you know, how much each one was going to get, that's not something that's required here. And on the same . . . Your argument is that's what discovery is for, right? Yes, Your Honor, and that's what a jury is for ultimately, too, right? It will determine who the contract was with and when it comes to the defendants, they'll decide the allocation of responsibility or liability, right? We add both defendants because we don't want one saying, well, I wasn't part of that. The contract was with my company, Game Changers, but you didn't add them to the lawsuit. Therefore, you're not going to win any money. That's what the jury is for. That's what we have allocation for liability from a jury. And finally, we say split, and I would contend, and I think there are reasonable inferences that can be drawn, is that the word split is synonymous with half. And, you know, maybe we should have spelled that out, you know, very specifically and put 50 percent, but the word split, I think, is synonymous with half, and I'm hoping the court can find that inference. Finally, I'd like to wrap up in pointing out that this case is actually proceeding. It was five months from the time Mr. DiAppellis filed their brief, and when this order came down, we went through all of written discovery. We engaged in in-person mediation. This case is ready to go to trial after we take two depositions, and so if the court decides to remand it, there won't be that much more to do to have it heard before a jury. With that, thank you, Your Honor. Thank you, Mr. Crisp. Your case, both of today's cases, are under submission, and the court is in recess until 9 o'clock tomorrow.